**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| CELIA GIBOYEAUX, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:21-CV-270-JEM |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Celia Giboyeaux

on August 30, 2021, and Plaintiff's Brief in Support of Reversing the Decision of the

Commissioner of Social Security [DE 16], filed on March 1, 2022. Plaintiff requests that the

decision of the Administrative Law Judge be reversed and remanded for further proceedings. On

April 11, 2022, the Commissioner filed a response, and Plaintiff filed a reply on April 27, 2022.

For the following reasons, the Court remands the Commissioner's decision.

**I.      Background**

On October 22, 2015, Plaintiff filed an application for benefits alleging that she became

disabled on February 1, 2009, amended to September 26, 2015. Plaintiff's application was denied

initially and upon reconsideration. After an initial hearing and appeal to the Northern District of

Indiana, the case was remanded back to the agency on January 28, 2020, and on June 5, 2020, the

Appeals Council remanded the case for a new hearing.  On March 4, 2021, Administrative Law

Judge ("ALJ") Charles  Thorbjornsen held a telephonic hearing at which Plaintiff, with an attorney,

two medical experts, and a vocational expert ("VE") testified. On May 17, 2021, the ALJ issued a

decision finding that Plaintiff was not disabled.

1

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since September 26, 2015, the amended alleged onset date.

3. The claimant has the following severe impairments: anxiety, depression, inflammatory polyarthoropahy, arthalgia, chronic hives/chronic idiopathic urticarial, asthma, and cervical radiculopathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: never climb ladders, ropes or scaffolds; never operate foot controls bilaterally; engage in work only on even terrain; avoid all exposure to extreme heat, cold and pulmonary irritants such as fumes, odors, dusts, gases and areas of poor ventilation; occasional exposure to workplace hazards such as unprotected heights and moving machinery. She is limited to simple, routine tasks on a continuous basis; unable to perform work that requires directing others, abstract thought or planning. She is also limited to simple work-related decisions and routine workplace changes; no assembly-line pace work but with end of the day quotas with no tandem tasks or teamwork where one production step is dependent upon a prior step; limited to work that requires only superficial and no direct contact with the public and only occasional contact with co-workers and supervisors in a setting with minimal interaction on detailed matters.

6. The claimant is unable to perform any relevant past work.

7. The claimant was a younger individual age 18-49 on alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

2

national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 26, 2015, through the date of this decision.

Plaintiff now seeks judicial review of this decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ

3

"uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2014). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ erred in weighing the physician reports in the record, in analyzing Plaintiff's subjective symptoms, and in crafting a residual functional capacity (RFC) assessment that is not supported by substantial evidence. The Commissioner argues that the opinion is supported by substantial evidence.

Plaintiff argues that the ALJ erred in evaluating the opinions of Plaintiff's treating doctors.

4

The ALJ was required to analyze a number of factors when determining the weight to give to medical opinions in the record and to thoroughly explain the weight given the opinions. The most important factors are the relevance of the medical evidence and explanations used to support the medical opinions and the consistency of the medical evidence with other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)-(2); 416.920c(b)(2), (c)(1)-(2).

Dr. O'Shea, Plaintiff's treating psychiatrist, completed an assessment and opined that Plaintiff's mental health impairments leave her unable to meet competitive standards to perform unskilled work because of daily and weekly interruptions from psychologically based symptoms and an inability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 4042. She concluded that Plaintiff would be likely to be off-task of even a simple job an average of 10% of the workday and would be absent from work about two days per month because of her symptoms. AR 4043. The ALJ gave little weight to the opinions of Dr. O'Shea as to Plaintiff's mental limitations, finding it "inconsistent" with the record that shows "normal mental status exams, including intact concentration and memory" and some improvement with treatment, and because Plaintiff "stated that she got along with authority figures." AR 1692. Dr. Bryant, who had been seeing Plaintiff every 3-6 months for seven years, opined that Plaintiff is incapable of even low stress work because of her severe anxiety, suffered marked limitation in maintaining social functioning and was on a number of medications with significant side effects. The statement indicated that Plaintiff could stand for no more than 10 minutes before needing to switch position and stand or walk for less than two hours total during an 8 hour workday, with 5-10 minute breaks from work every 30 minute to an hour, off task time of 25% or more, and absence more than four days per month.  AR 3882- 3886.

5

The ALJ found that Dr. Bryant's assessment was entitled to "little weight' because it is "inconsistent in the record" since "there is nothing to support that the claimant can only stand and/or walk for less than 2 hours" and "nothing to support that the claimant would miss work, as she had improvement in her pain with medication as well as Dr. Kudaimi found her lupus to be stable." AR 1692. However, stability in a disease only means that it is not getting markedly worse or better, and improvement also does not mean that there is no longer limitation. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (as amended Aug. 20, 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."); *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Furthermore, the Court notes that the ALJ also disregarded the opinions of Dr. Kudaimi, which were consistent with those of Dr. Bryant, because he did not find consistency between those opinions and the rest of the record. He did not point to any part of the record that showed that the medication was sufficiently effective and that the stability of Plaintiff's lupus meant that she no longer experienced effects that would cause her to miss work.

Rather than give weight to these treating physicians, the ALJ gave great weight to the testimony of the non-examining medical professionals who reviewed Plaintiff's records and testified at the hearing. It appears that the ALJ has disregarded the fact that "[a] medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [their] folder," 20 C.F.R. § 404.1520c(c)(3)(i)-(v); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (expressing disapproval where "ALJ

assigned little weight to every medical opinion related to physical conditions except for the one provided by . . . an agency physician who never examined [the plaintiff].”); *Kaminski v. Berryhill*, 894 F.3d 870, 874–75 (7th Cir. 2018), amended on reh'g (Aug. 30, 2018) (“The judge also impermissibly cherry-picked evidence. Specifically, the judge appears to have overlooked the consulting psychologist's report . . . yet relied heavily on the reports of doctors who did not examine [plaintiff] but who opined that he could work with some restrictions.”). Although the ALJ is not required to give controlling weight to the opinions of Plaintiff's treating specialists, in this case ALJ has failed to “provide a ‘logical bridge’ between the evidence and his conclusions” to disregard the specialists' opinions because of some findings of stability and improvement and rely instead on the opinions of physicians who only reviewed the record. *O'Connor-Spinner*, 627 F.3d at 618.

The concerns with cherry-picking and mischaracterization go beyond just the ALJ's assessment of Plaintiff's physicians' statements. He characterized her clinical findings as “essentially normal,” describing the portions of examinations with normal results but ignoring the reports of pain and abnormalities, and diagnoses of tendinitis, carpal tunnel syndrome, and cervical disc disorder within those same reports. *See, e.g.*, AR 913-916. As Plaintiff argues, the ALJ also identified a few instances of activities Plaintiff reported doing as evidence that she is not as limited as she claims, but without also including the reports of pain or anxiety following those attempts, nor the assistance she required. The ALJ pointed to a few medical notes that he characterized as including reports to her physicians that her pain did not have an effect on her daily life but left out the reports in those same medical records of how activities like housework caused her to experience more pain. The ALJ also emphasized Plaintiff's ability to take “care of her children, including feeding and clothing them” as reasons to conclude that Plaintiff's reported symptoms are

inconsistent with the evidence.  AR 1691. Not only is making sure that 10-12 year-olds are fed and dressed a very low bar, the opinion also leaves out any mention of the significant assistance she received from the preteens themselves as well as from the children's father and her other family members. Furthermore, the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of personal hygiene, children, or household chores with the ability to work. *See, e.g.*, *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006); because of the "critical differences between activities of daily living and activities in a full-time job," such as the fact that a person has more flexibility in scheduling the former than the latter, can get help from other  persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also, e.g.*, *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Plaintiff also argues that the ALJ failed to incorporate Plaintiff's moderate limitations in concentration, persistence, and pace into the RFC. The ALJ concluded that Plaintiff would be able to perform a number of jobs based in large part on the VE's testimony. "Again and again, [the Seventh Circuit Court of Appeals] ha[s] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE

must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (collecting cases). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' [courts] will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.

In this case, the ALJ's hypothetical to the VE did not mention any specific difficulty concentrating, persisting in a task, or maintaining pace, but reflected the same limitations as is in the ultimate RFC, describing someone who can "perform simple, routine, and repetitive tasks but not at production rate pace but can meet end of day quotas" and has only limited interaction with others. When Plaintiff's attorney asked about time off task, the VE testified that someone who was off task more than 10% of the day or had more than one absence or tardy arrival per month or one per month for six months in a row would not be able to sustain employment. The RFC raises logical questions about how someone who cannot keep up with production rate can meet quotas. *See Novak v. Berryhill*, No. 15 CV 50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017) ("The ALJ seemed to adopt a compromise position of sorts by agreeing, on the one hand, that plaintiff could not meet any "fast-paced" or "strict" quotas, but then concluding, on the other hand, that plaintiff could meet end-of-day requirements. But this analysis is vague and unsupported by any medical opinion. It is vague because the ALJ did not explain the underlying logic. Presumably, although the Court is not entirely sure, the ALJ is envisioning a tortoise-and-the-hare scenario in which plaintiff

would be unable to keep pace consistently throughout the day but could somehow catch up later in the day. If so, there is nothing in the record to suggest that plaintiff, despite his slow processing speed, had unusual bursts of productive energy akin to a college student who pulls an all-nighter to finish a paper."). Furthermore, the ALJ's only explanation of how the hypothetical and the RFC account for Plaintiff's particular limitations is that she is limited "to no work at a production rate pace because of increased anxiety in stressful conditions." AR 1692. The ALJ's failure to address possible time off-task reinforces the Court's concern that he only considered the evidence favorable to his decision. From the description of how he determined the RFC, it is not apparent what the ALJ determined to be Plaintiff's specific concentration-, persistence-, and pace-related limitations or how the RFC accounts for her particular struggles. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[W]e have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.") (quoting *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)); *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the

ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public").

As Judge Collins noted in the previous decision remanding the case to the ALJ for a new determination, "most of the ALJ's discussion when assigning the RFC amounted to merely a recitation of information contained in Giboyeaux's medical records. But summary is not analysis. As a result, the ALJ failed to build an 'accurate and logical bridge between the ALJ's recitation of the . . . medical evidence and the decision to account for [Giboyeaux's] . . . impairments' by the limitations in the RFC." Opn. p. 18-19, AR 1819-20 (quoting *Craft*, 539 F.3d at 677-78). The same is true of this opinion. The ALJ summarized the vast medical record then chose evidence to support a finding of non-disability, including giving preference to the opinions of non-examining medical reviewers instead of the assessments of Plaintiff's treating specialists. The previous opinion and order instructed the ALJ to reconsider and articulate the RFC and the reasoning behind it, building a logical bridge from the evidence to the conclusions and relying on medical source opinions of limitations included in the RFC. The law of the case doctrine, applicable to judicial review of administrative decisions, requires "the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998); *see also Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). The Court again remands this case for a thorough weighing of the evidence in the record, including considering the weight to be given medical opinions in the record in accordance with the regulations. The ALJ is reminded of the requirement to draw a logical bridge between Plaintiff's limitations, including limitations in concentration,

persistence, pace, and the combination of Plaintiff's mental and physical limitations, explaining

how they are incorporated into the RFC. Although Plaintiff requests reversal with remand for an

award of benefits, an award of benefits is appropriate only if all factual issues have been resolved

and the records supports a finding of disability. *Briscoe*, 425 F.3d at 356. Given the ALJ's error in

analyzing the subjective symptoms, the factual issues have not been resolved, and remand for

benefits is not appropriate here. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record

is not so clear that we can award or deny benefits on appeal").

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's

Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and

**REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 10th day of August, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record